KEMP & HEBERT, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7978, 26926. Promulgated August 27, 1952.

*J. W. Greenough, Esq.*, for the petitioner.
*George G. LeBlanc, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The petitioner has abandoned all claim that it qualifies for relief under section 722 (b) (4) but it argues that its average base period net income is an inadequate standard of normal earnings because the normal operation of Palace was diminished during all of the base period due to the bank interference with management, an event unusual and peculiar in the experience of the taxpayer which occurred during the base period, within the meaning of section 722 (b) (1) ; the business of Palace was depressed in the base period because of the bank interference with management which was a temporary economic circumstance unusual in the case of the taxpayer within the meaning of section 722 (b) (2) ; and the creditor interference with management was a factor affecting the business of Palace which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of section 722 based upon section 722 (b) (5) would not be inconsistent with the principles underlying the other provisions of section 722 (b) and with the conditions and limitations enumerated therein. In other words, the petitioner's entire claim is founded upon the theory that the earnings of Palace during the base period were less than they would have been had there been no bank control in effect. It is not difficult to believe that less than normal earnings might result from taking the management of a business out of the hands of the corporate officers and placing it in the hands of creditors for the purpose of liquidating the debts due those creditors or for any purpose other than the regular operation of the business to produce profits for the stockholders. But did that actually happen in the case of Palace, to the operation of which the control was not primarily directed although the control included that operation?

The only merchandising activity in which the petitioner was engaged during the taxable years was the operation of the Palace store. The petitioner clearly limits its claim for relief to a comparison of the earnings of that store during the taxable years with the alleged constructive average base period net income from the operation of that store alone. Palace operated at a profit during the base period but other activities of the petitioner in connection with the liquidation of the old store resulted in losses which either reduced or wiped out those profits of Palace. The petitioner does not claim a credit based upon the actual operating income of Palace alone for the base period and its right to such a credit is not considered. Instead it seeks a larger credit based upon the alleged constructive average base period net income of Palace. It would construct that average base period net income without reference to the income or losses of the petitioner from

other activities during that period. However, a great deal of the evidence presented by the petitioner relates neither to the operation of the Palace nor to circumstances directly affecting it during the base period, but to the operation of the original store throughout its existence, to a disastrous jobbing and chain store expansion effort, to the gradual liquidation of the original store, the wholesale business, and six stores acquired in the expansion effort, and to the purchase and sale of a high grade men's furnishing store. The petitioner concedes that all of those activities were quite different from the operation of Palace. Those activities need be considered herein only insofar as they affected the base period operations of Palace.

There is no doubt that the petitioner was in financial difficulties in 1932 as a result of which Hebert was required to retire as manager and Nelson was substituted with instructions to reduce the debts. He disposed of the jobbing business, of the chain stores not already closed and of the high grade men's furnishing store prior to the base period years. He was instructed to curtail the original business in order to avoid additional losses and to pay off the creditors and retire the preferred stock as soon as possible. The only activities in which the petitioner engaged during the base period years were the operation of the Palace store and the operation of the original store. The latter was not to be liquidated through a forced sale but was to engage in limited operations in order to dispose most advantageously of the large stock of merchandise on hand in 1932 over an extended period of time during which no more new goods would be purchased than might be necessary to keep the store in business. That program was followed out and the original store was finally closed immediately after the base period years when the petitioner was again on a good financial basis.

It is not clear how the interference by the bank can be translated into increased base period earnings of Palace to give a credit, based upon income, in excess of that allowed, based upon invested capital. There was no intention on the part of any one at any time material hereto to liquidate the Palace store or to operate it other than on a profitable basis with the idea of continuing it indefinitely as the money making operation of the petitioner. Nelson testified in this connection:

Of course, at the Palace Store we were trying to build up a better store. We had charge accounts. We were trying to establish suitable merchandise. We recognized that was going to be our future business, and we were trying to keep that store going along with the good will of the public in mind. We did not resort to high-pressure advertising which hurts the prestige of a store. We were attempting to build the prestige of that store for the future. Our merchandising at the Kemp & Hebert store at that time was an entirely different type of operation for a different class of trade than at the Palace.

The record does not show to what extent or just how the efforts to liquidate the original store and its stock of goods during the base period adversely affected the conduct of the business of the Palace store, except as it deprived Palace of the full attention of Nelson. There is evidence that Nelson devoted most of his time during the base period to the business of the original store but there is little or no evidence of what he might have done during the base period to increase the profits of Palace had he devoted his entire time to its affairs. The evidence shows that very little was done to change the Palace operation when finally the original store had been disposed of and he was able to devote all of his time to Palace. Nelson testified that delivery of new merchandise ordered for Palace was deliberately delayed until February 1 and later at times, but it is not clear from the record how the so called bank control imposed that situation upon Palace. It does not appear that Palace was handicapped by a lack of capital during the base period years due to the fact that the bank was trying to get the other business of the petitioner liquidated as rapidly as possible. There is evidence that the Palace was trying to obtain nationally advertised lines of goods to sell but it obtained some during the period of bank control and it does not appear that that control was an adverse factor in obtaining other such lines.

The petitioner argues that the competitive position of Palace among Spokane department stores began to decline with the advent of bank control, was depressed all during the period of bank control, and revived as soon as that control was lifted. It relies to some extent upon exhibit 24 to support this argument. The exhibit indicates that Palace was obtaining a larger proportion of the total sales of the Spokane department stores from 1930 to 1936 than it was obtaining during the period 1936 to 1943 and thereafter its proportion of the total began to increase. However, these dates do not coincide exactly with the period of bank control. Furthermore, profits are the vital factor and the operations of Palace had not been profitable prior to 1934, for which period the chart indicates that Palace was obtaining a relatively large portion of total Spokane department store sales. The financial difficulties of the petitioner which resulted in bank control were in no way due to bank control but were due entirely to other factors and the bank took over in order to improve the situation. The petitioner assumes without proof that the variations shown by the graph were due to the bank control whereas they may have been due to a number of other factors. For example, the number of stores may not have remained constant from 1930 through 1945 or variations in the graph may have been due in whole or in part to changes in the operations of the other stores which had nothing to do with the bank control of the petitioner. The evidence as a whole, including the chart,

does not show that the sales of Palace were adversely affected during the base period by the bank control.

Thus when the record is thoughtfully and carefully examined in order to determine just what restrictions were imposed upon Palace and to what extent, if any, its business was depressed during the base period years as a result of the bank interference, no reasonably clear picture emerges which serves to bring the petitioner within the provisions of section 722 (b) (1), (2), (4), or (5) or to show that constructive average base period net income would give it a larger credit than those allowed by the Commissioner. The petitioner has failed to show that the Commissioner erred in denying it relief.

Reviewed by Special Division.

*Decisions will be entered for the respondent.*